## Richmond

SAMUEL JONES v. COMMONWEALTH OF VIRGINIA.

April 22, 1974.

Record No. 730240.

Present, All the Justices.

*Robert G. Cabell, Jr. (White, Cabell, Paris & Lowenstein,* on brief), for plaintiff in error.

*Linwood T. Wells, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

Samuel Jones was convicted of robbery. He appealed the final judgment of the lower court imposing sentence and assigned numerous errors including the sufficiency of the evidence to convict. We granted him a writ of error limited to a consideration of whether the trial court erred in permitting Fausto Molinet to testify that defendant admitted his guilt of the robbery during a conversation they had preliminary to a polygraph test.

██ Defendant was indicted for the armed robbery of the Ampthill Drug Store in Richmond. Prior to his trial he was held in jail in lieu of a $50,000 bond. Defendant was also suspected of being involved in the commission of other offenses. At the suggestion of his attorney, Jones employed the Burns International Security Services to administer a polygraph test to him. Counsel hoped that if defendant passed the test the amount of his bail would be reduced. On July 10, 1972, Richmond detectives Harry Duke and L. B. Adams escorted Jones to the office of Fausto Molinet, a polygraph expert associated with Burns Services. At the time and place of the testing counsel for Jones was present, and he and the two detectives remained in a room where, without the knowledge of Jones, they could hear and observe the test being administered. The defendant was taken by Molinet into a small room which was equipped with the polygraph instruments. Prior to making any actual polygraph reading Molinet apparently follows a routine with those to whom the test is to be administered. Molinet is a Cuban by birth, and said that he told Jones this to remove any suspicion of racial prejudice. He told the defendant that he did not like a certain police officer and referred to Detective Duke in a derogatory manner. He also advised the defendant that under the Fifth Amendment to the Constitution of the United States Jones did not have to answer any question; that Jones did not have to take the polygraph examination; and that if he would tell him "which of the places he had robbed he would not ask him about those places on the polygraph test". Molinet testified that after they had talked for a few minutes Jones told him that he had robbed the Ampthill Drug Store and that he had gotten approximately $449. Molinet then gave Jones a polygraph test.

Upon the trial of the case before the jury, the lower court ruled that the admission by Jones to Molinet was admissible. However, the court limited the Commonwealth to showing just the bare oral admission itself, eliminating all results of the polygraph test. Specifically, the testimony elicited by the Commonwealth from Molinet before the jury consisted of Molinet testifying that he was employed as a polygraph examiner with Burns Services and in that capacity saw Jones; that he instructed the defendant as to the Fifth Amendment to the Constitution of the United States; that he explained to defendant how the polygraph worked and that he would like to help him; that he would not ask Jones questions with reference to any place that he had robbed; that prior to administering the test he asked Jones if he

had robbed the Ampthill Drug Store; and that Jones admitted that he had committed the robbery and he had gotten approximately $449.

Molinet was cross-examined by counsel for Jones and reiterated much of what he said on direct examination.

The sole question in the instant case is whether an admission of guilt by a defendant, made to a polygraph expert prior to the defendant's taking a polygraph test, is admissible into evidence. Under our holding in *Lee* v. *Commonwealth*, 200 Va. 233, 105 S. E. 2d 152 (1958), the results of a polygraph test are not admissible, and in *Barber* v. *Commonwealth*, 206 Va. 241, 142 S. E. 2d 484 (1965), we held inadmissible evidence that the defendant was unwilling to submit to a lie detector test. We are not concerned here with whether the results of the polygraph test were admissible for the trial court excluded all evidence dealing with the actual polygraph test that was administered to Jones. Further, it is admitted that the test was made at his request. What we are concerned with are the circumstances surrounding the admission of guilt by Jones and the reliability of that admission.

The evidence in this case is conclusive that it was Jones and his counsel who initiated the request for the test. They desired that it be administered hoping that a successful test would result in a reduction in defendant's bail. The Commonwealth neither encouraged nor discouraged the test. While the police officers accompanied defendant to Molinet's office, this was necessary for security reasons and because he was in custody. What occurred in Molinet's office was not "staged" by the Commonwealth. Jones was in the presence of his own attorney and his own polygraph expert. Molinet was not an officer of the court, a police officer or a law enforcement officer. He was not employed by the Commonwealth. He occupied no official status. He was in the employ of the defendant, and no privilege attached to any communication between the two. Further, at no time did counsel for Jones interrupt the conversation between his client and Molinet, or make any effort to terminate the examination.

In considering the reliability of the admission made by Jones, we need only consider whether or not the admission was made voluntarily and under circumstances which give it credence. Whether the warnings required under certain conditions by *Miranda* v. *Arizona*, 384 U. S. 436 (1966), were given Jones by Molinet is of no moment. Jones was not being interrogated or confronted by police officers. He was having a session with his paid expert. There was nothing said or done by Molinet to precipitate a false statement by the defendant. On

the contrary, the whole thrust of Molinet's conversation with defendant was to put him at ease, to gain his confidence and to elicit the truth from him. The statement by Jones that he had in fact robbed the Ampthill Drug Store of $449 was made with the expectation that this crucial question would not be asked him by Molinet during the progress of the test.

In *Penn* v. *Commonwealth*, 210 Va. 213, 169 S. E. 2d 409 (1969), we approved the admission of a confession in evidence holding:

> "This confession was made voluntarily, knowingly, and intelligently. It was not coerced and it was not made as the result of any threats or promises. Defendant had not been subjected to any physical or mental oppression and had not been previously subjected to any interrogation or grilling by police officers. He had not been held incommunicado and had been given free access to his family and to the telephone. His physical needs had been met. There is not one scintilla of evidence in this record to establish, or even intimate, that the police officers did not accord defendant Penn his every constitutional right." 210 Va. at 227-28, 169 S. E. 2d at 418.

We can make virtually the same observations here. Having sought out and employed Molinet, the defendant then made a voluntary, knowing and intelligent statement. The statement was not coerced or made as the result of a threat or promise. The most that can be said is that it may have been made after Molinet gained the confidence of Jones. Jones does not claim that he had been subjected to any oppression by the police officers, had been held incommunicado or that the officers had not accorded him his every constitutional right.

Jones might argue that he was tricked into making the statement. If so this was done by his expert, and the admission was made under the belief that a true statement would gain him a favorable polygraphic test. It might be observed that Jones was "hoist[ed] on his own petard".

As a general proposition the admissibility of an admission or a confession depends upon "the application of a rule of evidence, that is, whether under the circumstances the admission or confession is trustworthy as testimony". *Owens* v. *Commonwealth*, 186 Va. 689, 700, 43 S. E. 2d 895, 900 (1947).

The real question in every case as to the admissibility of a confession is whether or not the confession was influenced in a way to create a doubt of its truth. It is for that reason that a confession made through

hope or fear, or one obtained by compulsion, must be excluded. In the instant case there are obvious safeguards assuring the validity of the statement by Jones and the reliability of its admission as evidence before the jury. Its reliability does not depend upon the validity of a polygraph test or the expertise of a polygraph operator in reading the results from such a test. The admission here was of an oral statement made by one individual to another individual. The jury tested and weighed the admission as it would any other confession or admission against interest.

We do not agree with counsel for defendant that because polygraph testing is not admissible, any statement by defendant made to a polygraph operator in the pretesting conditioning period, or as a preliminary to the testing, should also be excluded. The same reasons and considerations for excluding from the evidence the results of a lie detector or polygraph test do not apply to voluntary oral statements which are not made during the actual administering of such a test.

For the reasons given the judgment of the lower court is

*Affirmed.*